**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTINE M. LADD,

       Plaintiff,                           CASE NO. 05-CV-73046

-vs-

                                               PAUL D. BORMAN
GRAND TRUNK WESTERN              UNITED STATES DISTRICT JUDGE
RAILROAD, INC.,
       Defendant.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The matter before the Court is Defendant Grand Trunk Western Railroad's ("Defendant") July 5, 2007, Motion for Summary Judgment. (Doc. No. 31). Plaintiff Christina Ladd ("Plaintiff") filed her Response on July 26, 2007. A motion hearing was held on October 31, 2007. For the following reasons the Court GRANTS Defendant's motion.

**I.    BACKGROUND**

This case arises from Plaintiff's allegations that she was wrongfully discharged because of her race and gender. On approximately April 14, 2000, Plaintiff was hired by Defendant for a position in the rail track department. (Def's Br. Ex. A, Ladd Dep. at 29). Plaintiff is an African-American female.

Plaintiff was promoted twice during her employment, first to welder-helper and then to the position of welder. (Plf's Br. Ex. 1, Ladd Aff. at ¶ 4). Plaintiff was disciplined regarding work absences in 2003. (Ladd Dep. at 142). Due to her position and lack of seniority, Plaintiff was laid-off for certain portions of the winter season and recalled to work in March. (*Id*. at 59). While Plaintiff was employed, she was the only African-American female in the work area. (Plf's Br. Ex.

3, Maranzano Dep. at 39-40).

Plaintiff alleges she was subject to harassment as soon as she started working for Defendant in April 2000. (Ladd Dep. at 41). Plaintiff testified that she was "always being told if you can't do the job, you shouldn't be out here, it's a man's job out here, and stuff like that. If you can't handle your weight you shouldn't be out here, you're taking a man's job." (*Id*. at 41:11-14). However, she does not remember who made those comments. (*Id*).

The only people who made discriminatory or harassing statements whom Plaintiff recalls by name are Jason Richert and a man named Bill who worked in Flint.[1] (*Id*. at 42-43). Plaintiff also alleges she was treated differently because of her gender, explaining her co-workers, "nitpicked, they took [her] equipment, they tampered with the trucks, you're supposed to be in one place and they tell you to go to another place." (*Id*. at 46:11-15).

Plaintiff first complained of the alleged harassment in July 2004. (*Id*. at 84-87). She complained that other workers where tampering with her equipment. (*Id*.). Plaintiff testified that someone had taken her shear apart. (*Id*. at 76, 83-86). Plaintiff additionally alleges that one of three oxygen tanks in her possession was removed. (*Id*.). She testified when she informed her supervisor of this she was given a replacement. (*Id*.).

Bill Miller, Production Supervisor, was a direct supervisor of Plaintiff during July and October of 2004. (Plf's Br. Ex. W, Miller Decl. ¶ 1). David Chaney, Production Manager, was one of Plaintiff's supervisors in July 2004. (Plf's Br. Ex. V, Chaney Decl. ¶ 1). After Plaintiff complained that someone was tampering with her equipment, Chaney and Miller interviewed

---

[1] Plaintiff notes that the only comment that ever rose to a level where she felt she needed to complaint to Defendant was the single comment made by Richert discussed *infra*. (Ladd Dep. at 64).

employees in Plaintiff's work area. (Chaney Decl. ¶ 2; Miller Decl. ¶ 2). Chaney and Miller did not find any evidence to substantiate Plaintiff's claims. (*Id*.). Despite finding no substantiation of her complaint, Chaney counseled employees who worked with Plaintiff that no one should tamper with her or anyone else's equipment. (Chaney Decl. ¶ 3). Chaney was never put on notice by Plaintiff that she believed the tampering in July was based on her gender or her race. (*Id*. at ¶ 4). Although Plaintiff was unaware that Chaney spoke with her co-workers, she states, that if he did what he said she did she would be satisfied with Defendant's response to her complaint. (Ladd Dep. at 229).

On October 19, 2004, Plaintiff complained to Miller that someone had tampered with her grinder by loosening the bolts. (*Id*. at 87). Miller testified that she had called him about a "defective grinder." (Miller Decl. ¶ 3). Plaintiff called Miller to fix the grinder, and he did. (*Id*.). The next day, October 20, 2004, Plaintiff found that the bolts on the grinder were loose again. (Ladd Dep. at 88). Plaintiff called Miller and he replaced the grinder with a new one that same day. (*Id*.; Miller Decl. ¶ 3). Plaintiff did not have any issues with the grinder thereafter, specifically, after October 20, 2004, Plaintiff cannot recall her equipment being tampered with again. (Ladd Dep. at 89-90; Miller Decl. ¶ 4).

In October 2004, Plaintiff received a phone call from David Dean advising her to stay away from the tracks due to safety concerns. (Ladd Dep. at 51). During that phone call, Plaintiff alleges she heard Richert, in the background, stating to Dean that he should "tell that black bitch to get to the truck and answer her radio." (*Id*. at 52:1-2). Plaintiff subsequently called Miller to make a complaint about the Richert comment. (*Id*. at 35, 54-56; Miller Decl. ¶ 4). Miller testified that Plaintiff only complained that Richert had a "foul mouth" but did not specify what was actually said.

3

(*Id*. at ¶¶ 4-5). Miller advised Plaintiff that he or someone else would speak with Richert about the situation. (Ladd Dep. at 56; Miller Decl. ¶ 6). Miller testified that he spoke with Richert's foreman, Bill Jackson, who in turn instructed Richert to stop using offensive language. (Miller Decl. ¶ 6). Plaintiff testified Richert never made another comment to her which was racial or sexual in nature. (Ladd Dep. at 57).

The only name Plaintiff was aware of being called was "black bitch," on that single occasion by Richert, where she overheard that comment in the background of a telephone call with her supervisor. (*Id*. at 45-46). Joy Good, a friend and co-worker of Plaintiff's and one of the other few females in the work area, stated in an affidavit that she had heard Richert and David Dean refer to Plaintiff as "nigger" or "lazy nigger." (Plf's Br. Ex. 4, Good Aff. at ¶ 8). Good also avers she was also subject to harassment because of her sex. (*Id*. ¶¶ 10-12). On November 15, 2004, Good submitted a complaint on her own behalf detailing her issues. (*Id*. at ¶ 14).

In approximately November 2004, Plaintiff decided to take a demotion from welder to welder-helper in order to transfer to the Flint yard, where Joe Maranzano became her supervisor.[2] (Ladd Dep. at 58, 226-28; Maranzano Dep. at 34). Plaintiff went on furlough within a month of Richert's comment. (Ladd Dep. at 58-59).

In early February 2005, Plaintiff told Tracy Miller, an assistant superintendent, about the comment made by Richert. (Ladd Dep. at 58-59; Def. Br. Ex. Q, Arians Decl. ¶ 3). Miller informed Defendant's Human Resource Manager, Harlan Arians, who then spoke with Plaintiff on the telephone regarding her October 2004 complaint. (Arians Decl. ¶¶ 1-2; Ladd Dep. at 36). Plaintiff

---

[2] Plaintiff alleges in her brief that she took the demotion to move away from working with Richert. (Plf's Br. at 10). However, Plaintiff only testifies she took the demotion because she was "sick and tired." (Ladd Dep. at 58:21).

4

submitted a statement to Arians detailing her complaints. (Plf's Br. Ex. 5, February Complaint). Arians interviewed Plaintiff in person regarding her complaint and was involved in the investigation into Plaintiff's complaints. (Arians Decl. at ¶¶ 2-3). He helped interview multiple employees who Plaintiff indicated would have knowledge about the allegations in her complaint. (*Id*.). Plaintiff was unaware of any investigation during February and March 2005 into her complaint. (Ladd Dep. at 68-69, 211). This investigation was not complete when Plaintiff was suspended without pay pending an investigation of her injury on March 21, 2005, discussed *infra*. (*Id*. at ¶ 4).

On March 7, 2005, Plaintiff was recalled from furlough and reported to the Flint yard. (Ladd Dep. at 93; Maranzano Dep. at 34) At that time, Plaintiff went to Maranzano's office in Flint and advised him that she had filed a complaint against Richert and could not work with him. (Maranzano Dep. at 34). Maranzano assured her it would not be a problem because of the nature of their jobs permitted separation in that they were on different crews. (*Id*. at 34-35). He also testified that Plaintiff did not make him aware of the nature of her complaint against Richert. (*Id*.)

On March 21, 2005, Plaintiff alleges she injured her back while at work. (Ladd Dep. at 98-99, 149-50). Plaintiff alleges she was standing in the back of a truck moving a drill, when Richert entered the cab and moved the truck. (*Id*.). Plaintiff does not allege that Richert knew she was in the back of the truck.

Plaintiff did not report the injury right away, because she states that it did not hurt at first. (*Id*. at 151-52). However, she states she cried right after the accident occurred. (*Id*. at 174). Plaintiff did relate the injury to Mark Wilson, a welder, who in turn reported the injury to Maranzano. (*Id*. at 152, Maranzano Dep. at 42). Plaintiff also called Good after the accident and related what had happened. (*Id*.).

5

After being notified of Plaintiff's accident, Maranzano and David Cromie, Risk Manager, began a preliminary investigation into the matter. (Maranzano Dep. at 42-47; Ladd Dep. at 152-53). This investigation included interviewing any potential witnesses. (*Id*.). Richert and five other witnesses testified Plaintiff was not in the trunk when it was moved. (Maranzano Dep. at 42-52; Def's Br. Ex. D, Wizauer Dep. at 18). Plaintiff asserted she was in the truck and there were no witnesses to the accident and no one else supported her statement of the facts. (Ladd Dep. 152-53). Plaintiff maintains all of the witnesses opposing her version met to concoct a story to support Richert's verison of the events. (*Id*. at 103-04). Plaintiff alleges their motivation to lie on Richert's behalf was to "protect" Richert. (*Id.* at 158).

Maranzano proceeded to write up an accident report and spoke with Robert Cerri and Hunt Cary. (Maranzano Dep. at 28). Robert Cerri, Superintendent of Engineering, was generally the ultimate decision-maker regarding discipline employees received for violating work rules or engaging in misconduct. (Plf's Br. Ex. T, Cerri Decl. ¶¶ 1-2). Cerri testified that after being apprised of Plaintiff's injury and Maranzano's investigation, he determined that she should be removed from service pending the investigation. (*Id*. at ¶ 4). Cerri also determined that Richert would not be removed based on the corroborating witness testimony gathered in the initial investigation. (*Id*.; Maranzano Dep. at 52).

On April 8, 2005, in accordance with the Union's protocol, Defendant held a formal investigation before a conducting officer, Larry Wizauer, an employee of Defendant. (Wizauer Dep. at 13, Maranzano Dep. at 54). Richert was charged with unsafe conduct causing a personal injury, and Plaintiff was charged with violation of falsifying an injury report. (Ladd Dep. at 154 & Ladd Dep. ex. 10, transcript of investigation). Plaintiff did not allege discrimination at the hearing. (*Id*.

at 159). Wizauer produced a summary of his findings to Cerri and the Labor Relations Department. (Ladd Dep. at 173-74, Wizauer Dep. at 28; Cerri Decl. ¶¶ 3-5). Wizauer determined that Plaintiff had violated work rules by falsifying an injury report. (Plf's Br. Ex. 10, Wizauer Findings at 6).

On April 12, 2005, Plaintiff filed her first charge with the EEOC alleging sex discrimination alleging she was subject to a hostile environment "most recently on or about November 19, 2004." (Def's Br. Ex. 6, EEOC Charges).

On April 21, 2005, Cerri made the ultimate decision to terminate Plaintiff, despite the discharge letter being signed by Wizauer did not result in her termination, *per se*. (Cerri Decl. at ¶ 5). Cerri testified that although he was aware of Plaintiff's earlier complaints regarding offensive language he was unaware at the time he made the decision to terminate her employment that she had filed a charge with the Michigan Department of Civil Rights and the EEOC. (*Id*. at ¶ 6).

On April 27, 2005, after her discharge, Plaintiff filed a second charge with the EEOC alleging race and sex discrimination, as well as a retaliatory discharge. Plaintiff was granted a right-to-sue letter.

On August 5, 2005, Plaintiff filed this present action alleging Retaliation under Title VII, Sex Discrimination under Title VII, and Race Discrimination under Title VII.[3]

On July 5, 2007, Defendant filed this Motion for Summary Judgment on all three counts alleged in Plaintiff's Complaint.

**II.     ANALYSIS**

    **A.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim,

---

[3] The Court notes Plaintiff's Count I, Retaliation, alleging hostile environment as well.

or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which

8

that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.      Race and Sex Discrimination**

Title VII prohibits an employer from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color [or] sex." 42 U.S.C. § 2000e-2(a)(1). Discrimination claims under Title VII based upon disparate treatment are analyzed under the three-prong *McDonnell-Douglas* framework. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). The *McDonnell-Douglas* framework requires that: (1) plaintiff must show a *prima facie* case of racial and/or sexual discrimination, which gives rise to a presumption of discrimination; (2) then, the burden shifts to the defendant who must demonstrate a legitimate, non-discriminatory reason for the adverse employment action; and (3) finally, if the employer satisfies this burden, the plaintiff must then show that the proffered reason was pretext for discrimination. *Id*. at 414-15 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To set forth a *prima facie* case, Plaintiff must show: (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class, or she was treated less favorably than

9

similarly-situated persons outside of the protected class.[4] *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 n.4 (6th Cir. 1992).

Defendant avers Plaintiff has failed to establish a *prima facie* case of sexual or racial discrimination based on disparate treatment because: (1) she was not qualified for her position as she was fired for falsifying an injury report; and (2) there is no evidence that similarly situated employees were treated differently.

In the present case, Plaintiff concedes that she has failed to set forth claims of sexual or racial discrimination based on the theory of disparate impact because she fails to rebut Defendant's arguments or set forth any genuine issues of material fact on the issues. Therefore, to the extent Plaintiff alleged sexual or racial discrimination in her Complaint based on disparate treatment, summary judgment is appropriate where Plaintiff has failed to show that any genuine issue of material fact exists as to whether she was a qualified employee or similarly situated employees were treated differently.

Therefore, the Court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's sex discrimination and gender discrimination claims based on disparate treatment.

**C.     Hostile Work Environment**

"The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises." *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). To set forth a *prima facie* case of hostile work environment based on either sexual or racial harassment pursuant to Title VII, Plaintiff must establish: (1) she is a member of a protected class; (2) she was subject to unwelcome sexual and/or racial harassment; (3) the harassment was based on sex and/or race; (4)

---

[4] Plaintiff does not allege she was replace by someone outside of the protected classes.

the charged sexual and/or racial harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Serv.*, 453 F.3d 724, 733 (6th Cir. 2006). Further, "the plaintiff must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim subjectively regarded it as abusive." *Smith v. Leggett Wire Company*, 220 F.3d 752, 760 (6th Cir. 2000). "The plaintiff must also prove that [her] employer 'tolerated or condoned the situation,' or knew or should have known of the alleged conduct and did nothing to correct the situation." *Id.* (citation omitted).

It is undisputed that Plaintiff is female and African-American and therefore, a member of the respective protected classes.

Defendant contends Plaintiff's claims of hostile work environment based on sexual or racial harassment fail because she cannot show that she was subjected to a pattern of harassment or that Defendant "condoned" it after being apprised of the situation.

Plaintiff has alleged the only comment which evidenced sexual and racial harassment was the comment made by Richert. Plaintiff testified:

> Q: What else, in addition to the comment by Richert, is the basis for your claim? Putting aside the tampering with the truck, we'll get to that.
> A: That's it.
> Q: That's it?
> A: Yes.

(Ladd Dep. at 65:6-11). Plaintiff has also alleged the July and October instances of equipment tampering were examples of harassment. (*Id.* at 65-66). However, Plaintiff cannot say whether the tampering was because of her race or her sex or both. (*Id.*). Plaintiff also does not know who

11

tampered with her equipment. (*Id*. at 84-89).

This Court need not wrestle with the issue of whether Plaintiff has met her burden of showing the single comment and equipment tampering created a sufficient pattern of harassment because Plaintiff has failed to set forth a genuine issue of material fact on the issue of Defendant's liability for the hostile environment claims.

In *Davis v. Monsanto Chemical Co*., 858 F.2d 345 (6th Cir. 1988), the Sixth Circuit held to establish an employer's liability in a hostile environment claim, a plaintiff must show that an "employer tolerated or condoned the situation. In order to hold the employer liable for the conduct of the victim's co-workers, the plaintiff must establish that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action." *Id*. at 349. The Sixth Circuit has also stated that an employer "can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known. The act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment." *Blankenship v. Parke Care Ctrs*., 123 F.3d 868, 873 (6th Cir. 1997).

In *Davi*s, the plaintiffs alleged that on one occasion white co-workers had directed a racial slur towards them. *Davis*, 858 F.3d at 347. The plaintiffs also alleged racial graffiti appeared on the bathroom walls. *Id*. However, "the only time this problem was reported to a supervisor . . . the graffiti was promptly painted over." *Id*. A plaintiff also reported to his supervisor that his time card had been altered and spit on. *Id*. After the complaint, a supervisor promptly posted a notice stating the conduct was not tolerated. *Id*. Finally, the plaintiffs argued a poster had been altered to reflect an the image of a black man and they were not allowed to eat in with their white co-workers in the

lunchroom; neither of these incidents were reported. *Id.* The Sixth Circuit held that these facts did not support a finding of a hostile work environment because the evidence showed the employer did not condone the behavior and it took appropriate measures to remedy the situation. *Id.* at 349. The Sixth Circuit also found the other alleged incidents of harassment went unreported and, therefore, the employer could not be expected to know or respond to them. *Id.*

In the case at bar, Plaintiff first complained of equipment tampering in July 2004. (Ladd Dep. at 66-67, 87). After receiving the complaint, Miller and Chaney investigated the allegations and Chaney counseled the employees against tampering with anyone's equipment. (Chaney Decl. ¶¶ 2-4; Miller ¶ 2). Ladd testified that this response was satisfactory. (Ladd Dep. at 229).

In October 2004, Plaintiff complained about her grinder two days in a row. (Ladd Dep. at 87-88; Miller Decl. ¶ 3). Miller fixed the grinder, and then replaced it the next day. (*Id.* at 88-89; Miller Decl. ¶ 4). Plaintiff testified that after this incident no one tampered with her equipment again. (Ladd Dep. at 90).

Plaintiff also complained about Richert's comment in October 2004. (*Id.* at 35; 54-56). She testified that she complained to Miller and he responded appropriately by addressing the situation and instructing them not to use the foul language again. (Ladd Dep. 34-35, 54-56, 83, 209-10; Miller Decl. ¶ 6). Defendant also launched a further investigation into Plaintiff's allegations in February 2005 which was still on-going when she was suspended in March 2005. (Arians Decl. ¶¶ 2-4). Plaintiff testified after she reported Richert's comment she did not hear Richert or any other employee use sexist or racist language again. (Ladd Dep. 57-58).

Plaintiff states that she continued to be harassed after October 2004. (Plf's Br. at 16). However, Plaintiff affirmatively stated her equipment was not tampered with after October 2004,

the only racist comment she was ever subject was Richert's in October 2004, and she was not subject to any other sexist comments after October 2004. (Ladd Dep. at 47, 57-58, 90).

Therefore, even with the evidence taken in a light most favorable to Plaintiff, she has failed to show that Defendant did not respond appropriately or condoned the sexist or racist conduct and comments made by its employees. At most Plaintiff has shown she was subject to equipment tampering and perhaps sexist comments prior to July 2004. (*Id*. at 41). She did not report this behavior or alert Defendant of it until July 2004. (*Id*. at 84-87). Plaintiff has not set forth any facts in which this Court could find that Defendant should have known of the comments Plaintiff was subject to prior to 2004, when she did not report them or complain. Plaintiff testifies that she is satisfied with Defendant's response to her complaints regarding the equipment tampering and Richert's comment. (*Id*. at 56, 229). She further testified that both the comments and the tampering stopped after October 2004. (*Id*. at 57, 89). As a result, Plaintiff has failed to set forth a genuine issue of material fact on the issue of whether Defendant acted appropriately to her complaints.

Therefore, summary judgment is appropriate on her claims of hostile work environment.

**D.     Retaliation Claim**

Title VII provides,

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To set forth a *prima facie* case of retaliation under Title VII, Plaintiff must evidence: (1) she engaged in activity protected by Title VII; (2) her exercise of that right was known by the defendant; (3) subsequently, the defendant took an employment action adverse to Plaintiff;

and (4) there was a causal connection between the protected activity and the adverse employment action. *DiCarlo*, 358 F.3d at 420. Once Plaintiff has established her *prima facie* case, the burden shifts to Defendant to set forth a legitimate and non-discriminatory reason for the adverse action. *Id*. If this is established, the burden shifts back to Plaintiff to show the proffered explanation is pretext for unlawful retaliation. The Sixth Circuit has recognized that "[t]he burden of establishing a *prima facie* case in a retaliation case is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

There is no dispute that Plaintiff engaged in statutorily protected conduct when she filed her two claims with the EEOC on April 12, 2005 alleging sex discrimination and April 27, 2005 alleging race and sex discrimination and retaliatory discharge. Defendant does dispute, however, that Plaintiff has shown her discharge was causally related to her complaints.

The Sixth Circuit has held temporal proximity between an adverse employment action and an employee's protected standing alone is insufficient to establish a causal connection for retaliation claim. *Nguyen* , 229 F.3d at 566. However, when temporal proximity has been considered with other evidence of retaliatory conduct, such evidence is sufficient to infer a causal connection. *Id*.

Plaintiff avers that the temporal proximity between her first EEOC charge, April 12, 2005, and her termination, on April 21, 2005, and the fact she was treated differently than others constitutes sufficient evidence in infer the required causal connection. The Court acknowledges that the time between Plaintiff's charge with the EEOC and her termination is extremely close. However, Plaintiff's proffered "other evidence" is lacking. Plaintiff argues her "other evidence" is that she was treated differently than other employees. (Plf's Br. at 23).

In *Moore v. KUKA Welding Systems*, 171 F.3d 1073 (6th Cir. 1999), the Sixth Circuit found

sufficient evidence of retaliatory behavior when Plaintiff was isolated by his co-workers after filing his complaint and he also presented evidence that he was subject to "frequent disciplinary writeups . . . . for trivial matters and unwarranted criticism of [his] work." *Id*. at 1080. Plaintiff argues that like *Moore*, where the plaintiff was treated differently than his co-workers, so too was she treated differently. However, Plaintiff's only proffered "other evidence" is that she was discharged for violating a rule against falsifying an injury report after filing her complaint and Richert was not terminated for *different* rule violations over the course of his employment with Defendant.

The Court finds Plaintiff's case distinguishable from *Moore*. Unlike *Moore*, where the plaintiff was treated differently as evidenced by being isolated, unwarranted criticisms and multiple disciplinary actions subsequent to filing his complaint, Plaintiff has only the argument that she was terminated for violating a rule and another employee was not discharged for violating a different rule. This evidence is not compelling on the issue of retaliation because Plaintiff has not shown she different treatment because she cannot show that Richert violated the same or similar rule. Therefore, the Court should find that Plaintiff has failed to show that there is a genuine issue of material fact as to the causal connection.

Further, assuming *arguendo* Plaintiff did present a *prima facie* case for retaliation under Title VII, Plaintiff still fails to establish Defendant's reason for her discharge was pretext for racial or gender discrimination. To establish pretext, Plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons: (1) had no basis in fact; (b) did not actually motivate the termination; or (3) the proffered reasons were insufficient to motivate the discharge. *Manzer v. Diamond Shamrock. Chem Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citations omitted).

Defendant has submitted that it terminated Plaintiff's employment after it was determined

during a formal investigation that Plaintiff had falsified an injury report. The formal investigation consisted of a hearing which lasted a full day and at which she could call witnesses. Plaintiff's verison of the events was disputed by five other employees at the time of her suspension and at the hearing.

Plaintiff contends that Defendant's proffered reasons did not actually motivate the discharge and was insufficient to for her discharge. Plaintiff's argument that her filing of a fraudulent injury claim did not actually motivate her discharge, is based on the fact that her termination letter stated "[i]n consideration of this rule violation and your past discipline record, you are therefore being dismissed from the service of the Company effective immediately." (Plf's Br. Ex. 12, Termination Letter). Plaintiff avers that "but for an absenteeism counseling in 2003, Plaintiff did not have a disciplinary record." (Plf's Br. at 24). This argument ignores the plain fact that Plaintiff did have a disciplinary record; Plaintiff testified that she had been given a written warning regarding her absenteeism in 2003, and then was subsequently disciplined for further absences. (Ladd Dep. at 142, 206; *see also* Ladd Dep, ex. 22, discipline warning). Therefore, to the extent Plaintiff appears to argue her lack of a disciplinary record proves her discharge was not motivated by her rule violation and her disciplinary record, such a argument is without merit.

Plaintiff further contends because Richert had violated other rules and was not discharged, she has shown that her alleged violation was insufficient cause for termination. Again, Plaintiff's argument is flawed where Richert was not charged with the same rule violation and such a comparison is unwarranted.

In sum, Plaintiff has failed to set forth genuine issues of material fact that Defendant retaliated against her for her protected activity and in the alternative, Plaintiff has failed to show

Defendant's proffered reasons for her discharge were pretext. For all of these reasons, the Court finds summary judgment is appropriate.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 31).

**SO ORDERED**.

                                                s/Paul D. Borman
                                                PAUL D. BORMAN
                                                UNITED STATES DISTRICT JUDGE

Dated: November 7, 2007

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 7, 2007.

                                                s/Denise Goodine
                                                Case Manager